IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAVID B., et al.,

          Plaintiffs,

v.                                             CIVIL ACTION NO. 2:25-cv-00109

JOSHUA VANBIBBER, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendants Vanbibber, Gandee, and Kerns's Motion to Dismiss* (Document 5), the *Memorandum in Support of Defendants Vanbibber, Gandee, and Kerns's Motion to Dismiss* (Document 6), *Defendant Ruppert's Notice of Joinder in Defendants Vanbibber, Gandee, and Kerns's Motion to Dismiss and Memorandum in Support of Motion to Dismiss* (Document 10), the *Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss* (Document 9), the *Plaintiffs' Motion for Their Brief in Opposition to Defendants' Motion to Dismiss Also Be Incorporated by Reference in Response to Defendant Tasha Ruppert's Joinder in Defendants' Motion to Dismiss* (Document 19), and the *Defendants' Reply to Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss* (Document 20). For the reasons stated herein, the Court finds that the motion to dismiss should be denied.

**FACTUAL ALLEGATIONS**

The Plaintiffs in this matter are S.M. and David B., as guardian and next friend of minors J.B. and M.B. David B. is the biological grandparent and adoptive parent of J.B. and M.B. They

name the following Defendants: Joshua Vanbibber, Adam Gandee, Stephanie Kerns, and Tasha Ruppert. The Defendants were all employees of the West Virginia Department of Health and Human Resources (DHHR)[1] at the time of the events alleged in the *Complaint* (Document 1). They are all sued in their individual capacities, as employees of DHHR.

Plaintiff S.M. is the biological daughter of M.J.K. J.B. and M.B. are biological sisters who were adopted by M.J.K. They began living in M.J.K.'s home in early 2015, when S.M. was twelve years old, J.B. was five, and M.B. was three. Soon after adopting J.B. and M.B., M.J.K. allowed her boyfriend, J.L., to move into the home with her biological and adopted daughters. J.L. was a registered sex offender who had been convicted of raping a nine-year-old female relative. M.J.K. and J.L. married in 2016.

The Jackson County, West Virginia, office of the WVDHHR received a referral call stating that M.J.K. had a registered sex offender in her home with the children and was aware of his status as a sex offender. The case was assigned to Defendant Kerns, although another worker conducted initial interviews with the children. The interview notes do not indicate that the children in the home were asked about whether J.L. was ever left alone with the children or whether he provided care for the children. J.L. told Ms. Kerns that he was allowed to be around children, despite his sex offender status, and M.J.K. and J.L. both stated that she did not leave the children with J.L. and that he was not a caregiver for the children. A babysitter was never interviewed, and no other witnesses familiar with the family were interviewed. Ms. Kerns had not handled cases in which a sex offender had access to children. She prepared a Family Functioning Assessment (FFA),

---

1 WVDHHR has been reorganized into three separate agencies, with the Department of Human Services (DHS) responsible for matters related to child protection and the foster care system. DHS was substituted for DHHR in a prior state case filed by the Plaintiffs, and the Court has used both WVDHHR and DHS to refer to the agency.

finding concerns related to J.L.'s conviction, but no impending dangers. Her supervisor, Defendant Vanbibber, approved the FFA without requiring additional interviews, seeking more records, or directing the filing of a neglected child petition.

The Defendants received a second referral on April 25, 2018, reporting that M.B. "told another girl that someone was kissing her private parts" and that "the stepfather living in the residence is a registered sex offender." (Compl. at ¶ 25.) The investigation was assigned to Defendant Ruppert. It was her first case involving an individual on the sex offender registry. Ms. Ruppert interviewed M.B., another student at M.B.'s school, S.M., J.L., and S.M.'s brother. J.L. claimed that he was under no restrictions regarding contact with children. Ms. Ruppert also indicated that she spoke with Trooper Dan Herdman, who checked J.L.'s compliance with the sex offender registration requirements, and he said there were no concerns, although Trooper Herdman testified that he believed a sex offender being around children would always be a cause for concern. Ms. Ruppert had concerns about three minor girls living in a home with a registered sex offender, but believed, based on a conversation with her supervisor, Defendant Gandee, that no further action was available. She found no disclosure of sexual abuse and no evidence of abuse or neglect, and the children remained in the home.

At the time of the 2015 and 2018 referrals and investigations, there had been several cases holding that exposing children to sex offenders constituted abuse and neglect and could warrant termination of parental rights, including in Jackson County. In addition, DHHR policies in place in 2015 and 2018 directed workers to open a case and file a petition seeking termination of parental rights when a parent, guardian, or custodian is on the sex offender registry.

On July 22, 2020, the Defendants received another referral, reporting that S.M. had been sexually abused by her stepfather, J.L., for six years, with the knowledge of her mother. The Defendants learned that J.L. was sexually abusing J.B. as well. During interviews at the Child Advocacy Center or in subsequent interviews, S.M., J.B., and M.B. all reported sexual abuse by J.L. S.M.'s abuse began when she was approximately 12 years old. J.L. was arrested on July 23, 2020. On December 21, 2022, he was convicted of 136 counts of sexual abuse, first and second degree; sexual assault; sexual abuse by parent, guardian, custodian; incest; and soliciting a minor via computer for his abuse of S.M. and J.B.

The Plaintiffs bring the following causes of action: Count I – 42 U.S.C. §1983 violation of the Fourteenth Amendment right to bodily integrity; Count II – 42 U.S.C. § 1983 civil conspiracy; Count III – 42 U.S.C. § 1983 state-created danger; Count IV – aiding and abetting violation of the West Virginia Human Rights Act; Count V – civil conspiracy; and Count VI – negligence. They seek compensatory and punitive damages.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,*

588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

### A. Arguments

The Defendants argue that any official status claims must be dismissed because 42 U.S.C. § 1983 does not permit claims against states or state officials acting in their official capacities, and states and their officials acting in their official capacities are immune from suits seeking money judgments under the Eleventh Amendment. The Defendants further argue that res judicata bars the Plaintiffs' claims. The Defendants state that the Plaintiffs filed this case two days after their claims were rejected in state court. In addition to arguing that claim preclusion bars the Plaintiffs' claims, the Defendants argue that issue preclusion or collateral estoppal bars re-litigation of the specific issues that were litigated in the earlier state suit. They argue that the West Virginia Supreme Court found that the Defendants had not violated any clearly established rights, based on the same facts, and that finding defeats every claim asserted herein. Finally, the Defendants contend that the *Rooker-Feldman* doctrine bars this Court from reviewing the state court decision in this matter.

The Plaintiffs contend that they pursued the state action against only the WVDHHR, because, although their complaint was also against "Unknown DHHR Supervisors," it was never

6

amended to include the actual supervisors after their identities were discovered. They argue that the state case involved a negligence claim against the WVDHHR, while this federal case involves §1983, civil conspiracy, and West Virginia Human Rights Act claims against the individual DHHR employees and supervisors. The Plaintiffs disclaim any intent to sue the Defendants in their official capacities. They argue that the West Virginia Supreme Court's decision in their state case was limited to finding that DHHR was entitled to qualified immunity as to the alleged negligence of its employees, and that finding does not necessarily mean the employees could not be subject to liability or that the instant federal claims could not survive. They contend that they are now pursuing new theories against new defendants, not relitigating the same claims dismissed by the state court. They argue that res judicata is not applicable because there was no final adjudication on the merits of any issue other than qualified immunity as to the WVDHHR, the cases do not involve the same defendants, and the causes of action are distinct. The Plaintiffs further contend that *Rooker-Feldman* is not applicable because the outcome of the state case is not dispositive as to any legal issue presented in this federal case.

Given the Plaintiffs' clarification that they did not intend to bring official capacity claims, the Defendants assert that issue preclusion, rather than *res judicata*, is the proper basis for their motion to dismiss.

### B. Applicable Law – Collateral Estoppel and Rooker-Feldman

"Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." *In re McNallen*,

62 F.3d 619, 624 (4th Cir. 1995). In federal court, a state court judgment is given preclusive effect in accordance with the law of collateral estoppel in the forum state. *Id.*

"[C]ollateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgement to which such determination was essential to the judgment." *State v. Miller*, 459 S.E.2d 114, 120 (W. Va. 1995). Four conditions are required to bar a claim based on collateral estoppel:

> 1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *Ruble v. Rust-Oleum Corp.*, 902 S.E.2d 873, 874 (W. Va. 2024).

The *Rooker–Feldman* doctrine is derived from two Supreme Court cases. In *Rooker*, the Supreme Court explained that lower federal courts could not "entertain a proceeding to reverse or modify the judgment for errors" from a state court decision, because to "do so would be an exercise of appellate jurisdiction" and "[t]he jurisdiction possessed by the District Court is strictly original." *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923). In *Feldman*, the Supreme Court held that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings," as "[r]eview of such judgments may be had only in this Court." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

"The *Rooker–Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are 'inextricably intertwined with' questions ruled upon by a state court, as when success on the federal claim depends upon a determination 'that the state court wrongly decided the issues before it.'" *Plyler v. Moore*, 129

F.3d 728, 731 (4th Cir. 1997) (quoting *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir. 1995)). The Supreme Court has recently emphasized that "*Rooker-Feldman* . . . is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

### C.  Prior State Litigation

In the prior state case, the same Plaintiffs sued the West Virginia Department of Health and Human Resources, now known as the West Virginia Department of Human Services (DHS), and "Unknown DHHR Supervisors" based on the same factual allegations. The state complaint contained claims for "ordinary & gross negligence, reckless misconduct, fraudulent, malicious, oppressive conduct," and "state constitutional tort." (Document 5-1.) The Plaintiffs ultimately proceeded only with the negligence claims against the DHHR in the state courts. The West Virginia Supreme Court reversed the circuit court's denial of summary judgment to DHS, finding that DHS was entitled to qualified immunity. *W. Virginia Dep't of Hum. Servs. v. David B., Next Friend of J.B.*, 911 S.E.2d 884, 887 (W. Va. 2024). The court held that "for purposes of qualified immunity, internal agency policies, procedures, manuals, guidelines, or similar documents that have not been legislatively approved are not, and cannot be used to create, clearly established statutory rights or law of which a reasonable person would have known." *Id.* at 896 (rejecting the argument that the DHS policies cited by the Plaintiffs in both the state case and this case constituted clearly established law).

9

The West Virginia Supreme Court next considered whether the Plaintiffs could show that DHS was not entitled to qualified immunity based on the "fraudulent, malicious, or otherwise oppressive" acts of its employees, explaining that agencies may be held vicariously liable for the conduct of employees acting within the scope of their employment. *Id.* at 896-97. Thus, although "the Plaintiffs elected not to pursue relief from DHS employees for their allegedly oppressive acts," they "remain germane to [the] analysis of DHS's claim to qualified immunity because under West Virginia law, the qualified immunity of an agency is inexorably intertwined with that of its officers, employees, and agents based on the doctrine of respondeat superior." *Id.* at 896. The court ultimately found that "[t]he Plaintiffs have produced no evidence before this Court or in the circuit court suggesting that the DHS employees who investigated the CPS referrals acted or failed to act because of an improper motive," and because oppressive conduct requires an improper motive, the court found that DHS was entitled to qualified immunity. The court further found that a negligent training and supervision claim could not survive because the underlying DHS policies that were allegedly violated did not create clearly established rights. *Id.* at 899.

*D. Analysis*

The Defendants urge the Court to find that the West Virginia Supreme Court's findings establish that the Plaintiffs are not entitled to relief as to any of their claims. The Court finds both the Defendants' reading of the West Virginia Supreme Court decision and their proposed application of collateral estoppel to be overly broad. The West Virginia Supreme Court found only that DHS was entitled to qualified immunity under state law as to a negligence claim. No claims against individual employees were presented in the state case, and the specific causes of action are not identical. West Virginia qualified immunity is not legally identical to federal

10

qualified immunity. The Defendants are correct that collateral estoppel precludes this Court from resolving key issues decided by the West Virginia Supreme Court differently, including the finding that DHS policies do not constitute clearly established statutory rights or law for purposes of qualified immunity.[2] However, the Defendants have not demonstrated that outcome determinative issues in the present case are identical to those decided in the state case. The motion to dismiss does not address the elements of the Plaintiffs' claims or assert any defenses thereto beyond collateral estoppel and *Rooker-Feldman*. Given the specific, relatively narrow, issues decided by the West Virginia Supreme Court, the Court cannot find that all claims presented by the Plaintiffs regarding the same events are necessarily precluded.

For the same reasons the Court finds that collateral estoppel does not require dismissal of the Plaintiffs' claims at this stage, the Court finds that *Rooker-Feldman* does not bar the Plaintiffs' claims. It is not clear at this stage that the Court would have to review or modify the state decision in order to hear the Plaintiffs' claims. Therefore, the Court finds that the Defendants' motion to dismiss should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendants Vanbibber, Gandee, and Kerns's Motion to Dismiss* (Document 5) be **DENIED**. The Court further **ORDERS** that *Defendant Ruppert's Notice of Joinder in Defendants Vanbibber, Gandee, and Kerns's Motion to Dismiss and Memorandum in Support of Motion to Dismiss* (Document 10) and the *Plaintiffs' Motion for Their Brief in Opposition to Defendants' Motion to*

---

[2] Indeed, the Court would be bound by that precedent even if it were established in an unrelated case.

*Dismiss Also Be Incorporated by Reference in Response to Defendant Tasha Ruppert's Joinder in Defendants' Motion to Dismiss* (Document 19) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 26, 2025

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA